# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

                       )

**KATHLEEN MARGARET FERGUSON,**   )

        **Plaintiff,**              )

       **v.**                  )

**NANCY A. BERRYHILL,**        )   **Civil Action No. 18-11239-DJC**
**ACTING COMMISSIONER OF**    )
**SOCIAL SECURITY ADMINISTRATION,** )

        **Defendant.**          )

_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                               **January 14, 2020**

### I.    Introduction

Plaintiff Kathleen Ferguson ("Ferguson") applied for disability insurance benefits ("SSDI") and supplemental security income ("SSI") with the Social Security Administration ("SSA") on March 18, 2014. Following denial of her claims, pursuant to the procedures set forth in the Social Security Act, 5 U.S.C. § 706, 42 U.S.C. §§ 405(g), 1383(c)(3), Ferguson brought this action for judicial review of the final decision of Defendant Nancy A. Berryhill ("the Commissioner"), Acting Commissioner of the SSA, issued by an Administrative Law Judge ("ALJ") on April 24, 2017. Before the Court are Ferguson's motion to reverse, D. 16, and the Commissioner's motion to affirm that decision, D. 18. For the reasons discussed below, the Court DENIES Ferguson's motion to reverse and ALLOWS the Commissioner's motion to affirm.

## II.    Standard of Review

This Court has the power to affirm, modify or reverse a decision of the Commissioner upon review of the pleadings and record.  42 U.S.C. § 405(g).  Such review, however, is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citing Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996)).  Issues of credibility and inferences drawn from the facts on record are committed to the Commissioner, who ultimately resolves conflicts in the evidence and determines the disability status of the claimant.  Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (internal citation omitted). The ALJ's findings of fact are conclusive when supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion."  Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  As such, the Court must affirm the Commissioner's decision if it is supported by substantial evidence, Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490, 523 (1981), "even if the record arguably could justify a different conclusion."  Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

## III.   Factual Background

Ferguson was fifty years old when she ceased working on January 31, 2014.  R. 199, 430.[1] She had previously worked as a nurse's assistant, bookkeeper and then as a house cleaner/caregiver.  R. 454.

---

[1] Unless otherwise noted, all facts are drawn from the SSA's Administrative Record of Social Security Proceedings, D. 12, and cited as "R. __."

In her March 18, 2014 application for SSDI and SSI with the Social Security Administration ("SSA"), Ferguson claimed disability due to severe bilateral carpal tunnel syndrome, spurs and worsening pain in her feet, pain in her left knee and mental illness. R. 194, 413.

## A.  Medical History

### 1.  Bilateral Carpal Tunnel Syndrome

Ferguson has been treated for carpal tunnel syndrome. R. 203. Ferguson visited South Shore Orthopedics LLC ("South Shore") on December 30, 2015. R. 747. During this visit, John Kadzielski, M.D. discussed the results of an EMG test from August 25, 2015, which indicated severe bilateral carpal tunnel syndrome in the upper extremities. R. 747. Dr. Kadzielski ordered an injection in the right hand, which was performed on December 30, 2015, and a left carpal tunnel release surgery, which was done on January 5, 2016. R. 747-49. In a follow up appointment on January 20, 2016, Dr. Kadzielski noted that Ferguson was doing well after the surgery and saw improving "paresthesias of the left median nerve distribution." R. 751. Ferguson indicated that the surgery went well and that she felt less pain in her left hand. R. 203.

### 2.  Degenerative Diseases

Ferguson underwent an x-ray from Victor Valley Advanced Imaging on October 29, 2013 that showed there was no "definite fractures or sublaxations" and that there was "straightening of the cervical lordosis," resulting in a diagnosis of degenerative joint disease. R. 952, 977. The internal medicine consultation from MedPro Services Inc. ("MedPro") on July 24, 2014 noted a tenderness in Ferguson's lumbar spine and knees but also that the range of motion of her back and knees was within normal limits. R. 679. Over a year later, on September 15, 2015, Chris Sambaziotis, M.D. an orthopedic surgeon, evaluated Ferguson for her left knee pain. R. 884. Dr.

Sambaziotis noted that Ferguson reported mild pain that worsened with ambulation and presented treatment options such as physical therapy, activity modification, weight loss, steroid injection and total knee replacement.  R. 886.  Ferguson also had an x-ray of her foot on June 17, 2016 which found "mild degenerative changes" and "plantar calcaneal spur."  R. 899, 901, 903.

### 3.  Thyroid Disorder

Ferguson has also been treated for thyroid disorder.  R. 680.  When Ferguson was first diagnosed with Graves' Disease, a disease causing hypothyroidism,[2] she lost one hundred pounds. R. 784.  She underwent treatment with radioactive iodine in 2004.  R. 680.  She receives radioiodine treatment and is on levothyroxine to treat her hypothyroidism.  R. 680, 784.

### 4.  Mental Disorders

After losing her mother and three sisters over a period of three years, Ferguson has consistently seen mental health professionals.  R. 659.  On February 12, 2014, Ferguson was admitted to Arrowhead Regional Medical Center ("Arrowhead") for mood disorder, R. 654, 659, stabilized with medicine and discharged on February 14, 2014, R. 657-58.  Ferguson received outpatient counseling from Mary Hopwood, NP at Granite Medical Group ("Granite").  R. 1188. Granite records indicate that Ferguson was diagnosed with bipolar disorder and had manic and depressive episodes.  See, e.g., R. 784, 1188.  In a MedPro consultation, dated July 24, 2014, Dr. Karamlou also records that Ferguson had been taking twenty-five milligrams of Lamotrigine and Seroquel to help treat her mental conditions.  R. 677.

---

[2] Graves' Disease, National Institute of Diabetes and Digestive and Kidney Diseases, https://www.niddk.nih.gov/health-information/endocrine-diseases/graves-disease (last visited January 14, 2020).

Martina Voglmaier, Ph.D., evaluated Ferguson and performed neuropsychological testing at Nova Psychiatric Service ("NPS") on June 5, 2016 and August 16, 2016. R. 1046. She noted characteristics such as disorganized speech and difficulty recovering following error, R. 1143, Ferguson's ability to sustain attention was impaired. R. 1046.

Ferguson saw her treating psychiatrist, Andrey Gagarin, M.D., beginning in July 2015. R. 208-09. Dr. Gagarin reported, in a December 2016 letter, that Ferguson has Post-traumatic Stress Disorder, Attention-Deficit/Hyperactivity Disorder, Obsessive-Compulsive Disorder and major depression. R. 1185. The letter further noted that Ferguson's mental health conditions manifest in rapid speech, compulsive activities, hyperactive behavior, disturbed sleep, lack of energy and lack of interest in her daily activities. Id. Dr. Gagarin concluded that he "foresee[s] her mental health conditions lasting more than 12 months." R. 1186.

### 5. Obesity

Ferguson had a "fobi pouch" procedure, a form of gastric bypass surgery, in 1996. R. 863. Because she had a weight loss procedure done before she was told that "she would not be a candidate for another weight loss procedure." R. 779, 963.

## B. Before the ALJ

### 1. ALJ Hearing

At the January 6, 2017 administrative hearing, the ALJ heard testimony from Ferguson and James Soldner, a vocational expert ("VE"). R. 186.

#### a) Ferguson's Testimony

Ferguson testified that before August 15, 2013 she worked primarily as a housekeeper and home health aide for her mother and sister. R. 200. She also did light housekeeping. Id.

Afterwards, she was self employed as a home health aide for her sister until she died in January of 2014.  R. 198.

Ferguson explained that mental health problems keep her from working and had a breakdown in February 2014 that lead to hospitalization.  R. 202, 219.  She experiences uncontrollable crying and anxiety that is triggered by unexpected meetings or situations or surprises.  R. 206-07.  She believes that her mental conditions may have gotten worse when she was hospitalized and after the death of her sister in January 2014 and when she was hospitalized.  R. 220-21.  Ferguson saw mental health professionals consistently after that.  R. 221.  She saw Dr. Gagarin, a psychiatrist once a month and attended counseling weekly.  R. 208-09, 695.

Ferguson also has reported physical ailments, including carpal tunnel syndrome.  R. 203-04.  She underwent a "left carpal tunnel release" operation, see R. 747-48, and although she does not have the strength that she used to in that hand, she no longer experiences pain or numbness.  R. 203.  She still, however, experiences pain in her right hand, for which she uses a brace.  Id.  She testified that nerve damage in the right leg and pain in the left knee were exacerbated by the weather.  R. 204.  She testified that she recently went to the emergency room for plantar fasciitis, for which she wears a boot.  R. 205, 224.  She also reported sleep apnea, R. 222, and that she sleeps for about three hours and uses a CPAP machine.  R. 223.

According to Ferguson, understanding written information and getting along with others are difficult for her.  R. 210.  She testified she can walk about two hundred feet, lift twenty pounds, stand about ten minutes and sit for about fifteen to twenty minutes.  R. 210-12.  Ferguson testified she can lift twenty pounds but has trouble with fine motor skills, such as buttoning clothing, opening a jar or grasping a glass.  R. 21l.  She also has trouble climbing stairs, stooping, kneeling, crawling and crouching.  R. 212.

b) <u>VE's Testimony</u>

According to the VE, Ferguson's past relevant work as a personal attendant and housekeeping cleaner was equivalent to light work.  R. 229.  The ALJ posed three hypotheticals to the VE.  R. 230-32.  First, the ALJ asked the VE to assume:

> an individual of the claimant's age, education and work backgrounds who is able to lift 20 pounds occasionally, 10 pounds frequently, as well as sit for 6 hours and stand or walk for 6 hours in an 8-hour day.  She cannot climb ladders, ropes, or scaffolding.  This person can occasionally kneel, stoop, balance, crouch, crawl and climb stairs and ramps.  This person can frequently finger, handle and feel bilaterally.  She can perform simple, routine, and repetitive tasks over an eight-hour workday with short breaks on average every two hours.  She can make simple, work-related decisions.  This person can occasionally interact with supervisors and coworkers in that she could work in the presence of coworkers and engage in appropriate occasional social interactions but cannot work in the context of a work team or work-related interactions with coworkers and supervisors constantly or physically close.  She can interact with the public on an occasional basis, provided the interaction requires no more than exchange with non-person, work-related information or hand off of products or materials.  This person can tolerate simple, routine changes in a work setting.

R. 230.  According to the VE, an individual with such restrictions could not perform Ferguson's past relevant work, but he/she could work as a marker II, a fruit distributor or a plastic hospital products assembler, all jobs available in the national economy.  R. 230-31.

Second, the ALJ posed to the VE the same hypothetical but limited the claimant's ability to handling and fingering to only occasionally on the right.  R. 231.  With that additional restriction, the VE responded that such a person could work as a fruit distributor but not as a marker II or plastic hospital products assembler.  R. 231.  The VE further opined that this hypothetical person could work at the sedentary level as a surveillance system monitor.  R. 231-32.

Finally, in a third hypothetical, the ALJ asked the VE to consider the first hypothetical again, but to assume that claimant is "off task" fifteen percent or more of a workday.  R. 232.  The

ALJ added that such claimant also had two absences a month.  Id.  According to the VE, there would not be jobs available in the national economy for such a claimant.  R. 232.

Ferguson's attorney posed two hypotheticals to the VE.  R. 235-36.  The first hypothetical proposed a person that could not kneel or stoop.  R. 235.  The VE assessed that marker II, plastic hospital products assembler and fruit distributor would be available jobs for such claimant.  Id. The second hypothetical proposed a person who could not stand for more than ten minutes at a time.  R. 235-36.  According to the VE, the fruit distributor occupation would be precluded in this case but such a person could work as a plastic hospital products assembler, a marker II or a surveillance system monitor.  R. 236.

### IV.    Procedural Background

Ferguson filed claims for SSDI and SSI with the SSA on March 18, 2014, asserting that she was unable to work as of August 15, 2013.  R. 415.  After initial review, her claims were denied on September 24, 2014.  R. 314.  Her claims were reviewed by a Federal Reviewing Official and again denied on July 23, 2015.  R. 322.  On September 14, 2015, Ferguson filed a timely request for an ALJ hearing.  R. 328.  A hearing was held before an ALJ on January 6, 2017.  R. 186.  In a written decision dated April 24, 2017, the ALJ determined that Ferguson was not disabled and denied her claims.  R. 166-79.  The Appeals Council considered Ferguson's appeal, but declined to review the ALJ's decision on April 9, 2018.  R. 1-4.  Ferguson now petitions this Court to reverse and vacate the ALJ's decision, which remains the final decision of the Commissioner. D. 1 at 1-2.

### V.    Discussion

#### A.  Entitlement to Disability Benefits and Supplemental Security Income

A claimant's entitlement to SSDI and SSI turns in part on whether she has a "disability," defined in the Social Security context as an "inability to do any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i), 423(d)(1)(a); 20 C.F.R. § 404.1505. The inability must be severe, rendering the claimant unable to do his or her previous work or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

The Commissioner must follow a five-step process when she determines whether an individual has a disability for Social Security purposes and, thus, whether that individual's application for benefits will be granted. 20 C.F.R. § 416.920. All five steps are not applied to every applicant; the determination may be concluded at any step along the process. Id. First, if the applicant is engaged in substantial gainful work activity, then the application is denied. Id. Second, if the applicant does not have or has not had within the relevant time period, a severe impairment or combination of impairments, then the application is denied. Id. Third, if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted. Id. Otherwise, the application proceeds to the fourth step. Id. Fourth, if the applicant's "residual functional capacity" ("RFC") is such that she can still perform past relevant work, then the application is denied. Id. Fifth and finally, if the applicant, given her RFC, education, work experience and age, is unable to do any other work, the application is granted. Id.

### 1. Findings of the ALJ

Following the five-step process, at step one, the ALJ found that Ferguson had not engaged in substantial gainful activity since August 15, 2013, the alleged onset date. R. 168. At step two, the ALJ found that Ferguson has the following severe impairments: thyroid disorder, obesity,

lumbar degenerative disc disease, bilateral carpal tunnel syndrome status post left release, degenerative joint disease of the left knee, bipolar disorder and generalized anxiety disorder.  R. 169.  At step three, the ALJ determined that Ferguson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments ("Listing") in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.  Concerning the "Paragraph B" criteria for evaluating mental disorders, the ALJ found that Ferguson's mental impairments caused only "mild" limitations in three of the functional areas and "moderate" limitations in the remaining functional areas, R. 169-70, whereas Paragraph B criteria requires either an "extreme" limitation of one of the listed areas of mental functioning or a "marked" limitation of two of the listed areas to meet the level of an impairment.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ further concluded that the Paragraph C criteria for evaluating Listings 12.04 and 12.06 mental disorders was not met because the record did not show that Ferguson had a minimal capacity to adapt to changes in her environment and therefore did not have an impairment or combination of impairments that met one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 170.  At step four, the ALJ assessed Ferguson's RFC.  R. 170.  The ALJ found that Ferguson had the RFC to:

> perform light work . . . except: the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently.  She can sit for 6 hours and stand or walk for 6 hours in an 8-hour day.  She cannot climb ladders, rope or scaffolding.  She can occasionally kneel, stoop, balance, crouch, crawl and climb stairs and ramps.  She must avoid concentrated exposure to unprotected heights, dangerous machinery, and fumes, odors, dust, gases, and poorly ventilated areas.  She can frequently finger, handle, and feel bilaterally.  She can perform simple, routine and repetitive tasks over an eight-hour workday with short breaks on average every two hours.  She can make simple work-related decisions.  The claimant can occasionally interact with supervisors and co-workers, in that she can work in the presence of co-workers and engage in appropriate occasional social interactions, but cannot work in the context of a work team where work-related interactions with co-workers and supervisors is constant and/or physically close.  She can interact with the public on an occasional basis, provided interaction requires no more than exchange of non-personal work-related information.  This person can tolerate simple routine changes in a work setting.

R. 170.  Based on this RFC assessment, the ALJ concluded that Ferguson was not capable of performing any past work.  R. 177.  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Ferguson can perform such as marker II, fruit distributor or plastic hospital products assembler.  R. 178.  Accordingly, the ALJ concluded that Ferguson was not disabled.  Id.

### B.   Ferguson's Challenges to the ALJ's findings

Ferguson contends that the ALJ erred by (1) failing to evaluate a treating source medical opinion and according greater weight to an examining source without explanation; (2) mischaracterizing the record by ignoring evidence opposed to his view; (3) conducting a "Paragraph C"[3] analysis that was conclusive; (4) making a credibility determination about Ferguson's testimony that was conclusive; (5) the Appeals Council being egregiously mistaken in not considering new evidence that had a reasonable probability of changing the outcome of the decision; (6) and not supporting his findings of fact with substantial evidence.  D. 17 at 1.

### 1.   Weight Given to Medical Sources

Ferguson argues that the ALJ neglected to provide an explanation for his failure to evaluate the treating source and did not give any explanation for assigning greater weight to an examining source.  Id. at 7.  She also contends that the record includes treatment records and opinion evidence that support her disability claim.  Id. at 8.

Pursuant to 20 C.F.R. § 404.1527(c)(2), the ALJ is required to give controlling weight to a claimant's treating physician when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

---

[3] "Paragraph C" refers to the appendix of the code of regulations that concerns the mental health listing of impairments and considers whether a mental disorder is "serious and persistent." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[the] case record." The ALJ may nevertheless give the treating physician's opinion lesser weight when it is not supported by substantial evidence. Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) (citing Rivera v. Sec'y of Health & Human Servs., No. 92-1896, 1993 WL 40850, at *3 (1st Cir. Feb. 19, 1993) (summary disposition). The treating physician's opinion may not be supported by substantial evidence when it is "inconsistent with the other evidence in the record." Black v. Berryhill, No. 17-11987-DJC, 2019 WL 135686, at *7 (D. Mass. Jan. 7, 2019) (citing Reyes v. Berryhill, No. 16-10466-DJC, 2017 WL 3186637, at *7 (D. Mass. Jul. 26, 2017)) (internal quotations omitted).

In deciding the proper weight to assign to a treating source opinion, the ALJ is required to consider the length of the treatment relationship, frequency of the examination, nature and extent of the treatment relationship, support of the opinion by medical signs and laboratory findings, consistency of the opinion with the record as a whole, specialization of the treating source and other factors that may support or contradict the medical opinion. 20 C.F.R. § 404.1527(c). The ALJ does not have to consider each fact expressly but must give "good reasons" for the weight afforded to a treating source's medical opinion. Bourinot v. Colvin, 95 F. Supp. 3d 161, 177 (D. Mass. 2015) (citing 20 C.F.R. § 404.1527(c)). Additionally, the ALJ must ensure the determination is "sufficiently specific to make clear" to any subsequent reviewers the weight given to a treating source's medical opinion and the reasons for that weight. Reyes, 2017 WL 3186637, at *8 (quoting Alberts v. Astrue, No. 11-11139-DJC, 2013 WL 1331110, at *8 (D. Mass. Mar. 29, 2013); SSR 96-2P.

Contrary to Ferguson's contention, the ALJ did weigh Dr. Gagarin's opinion and provided an explanation for the weight he accorded such evidence. R. 175. In deciding the proper weight for Dr. Gagarin's opinion, the ALJ noted that Dr. Gagarin has been Ferguson's treating psychiatrist

and has treated her since July 2015. R. 175. Dr. Gagarin saw her once a month during the year of 2016. See, e.g., R. 1072, 1077, 1082. The ALJ accurately summarized Dr. Gagarin's letter, which reported Ferguson's diagnoses as bipolar II disorder characterized by major depression and hypomanic episodes, anxiety, ADHD, PTSD and obsessive-compulsive disorder. R. 175, 1185. Dr. Gagarin predicted her mental health conditions lasting for more than twelve months, R. 1186, but this opinion is not well supported by the substantial evidence in the record. Black, 2019 WL 135686 at *7. His own treatment notes did not support the degree of limitation that he proposes. R. 1186. Dr. Gagarin noted on several occasions that Ferguson's mental status was within normal limits. See, e.g., R. 173, 1072, 1077. On November 10, 2016, Dr. Gagarin noted that Ferguson has been "more effective" in functioning and that her sleep had improved. R. 1162. Other treatment records also conflict with Dr. Gagarin's opinion. See, e.g., R. 240, 284, 693. Arvind Salwan, M.D., who treated Ferguson from April 16, 2014 to August 14, 2014, did not record any abnormalities in mental status. R. 693. Dr. Blum's and Dr. Malisziwski's disability determinations listed her affective disorders as non-severe, R. 245, 290, and ultimately did not find Ferguson disabled. R. 250, 262, 296, 310. Ferguson furthermore had been recorded on July 29, 2015 by Timothy Sullivan, LICSW, attesting that she was feeling better and that Dr. Gagarin was managing her medication. R. 765. Because Dr. Gagarin's treating opinion was not consistent with the substantial evidence in the record, it was weighed by the ALJ, but not afforded controlling weight. See Rohrberg, 26 F. Supp. 2d at 311. The ALJ explained the weight of medical sources and prescribed appropriate weight to those sources because Dr. Gagarin's opinion was inconsistent with substantial evidence in the record. See R. 173-75.

The ALJ also explained that opinions "from non-examining and non-treating expert sources" were granted little weight, in accordance with 20 C.F.R. § 404.1527. R. 176. He gave

little weight to examining psychiatrist Earbin Stanciell, M.D. because Dr. Stanciell's determination that Ferguson had "mild limitations" in many areas "was not supported by the updated medical evidence." Id. The ALJ further granted little weight to the opinion of Azizollah Karamlou, M.D., who determined that Ferguson could do work "at the medium exertional level" because "[t]he evidence of the record indicate[d] the claimant has greater physical limitations" and can only "perform work at the light exertional level." Id. The ALJ, finally, granted "great weight" to both the opinion of examining psychologist Robert T. Beaton, Ph.D., and examining physician Dr. Adams, as per regulations concerning examining opinions 20 C.F. R. § 404.1527(c)(1). Id.

### 2. ALJ Treatment of Medical Opinion

Ferguson argues that the ALJ ignored evidence opposed to his view, thereby mischaracterizing the record. Id. at 9. She contends that the ALJ neglected to consider a range of evidence, including notes from Ferguson's treating therapist that emphasized her poor interaction skills, R. 1046, records from Atrius Health that emphasized her overwhelmed state of mind, R. 799, Ferguson's documented tendency to engage in negative self-messaging, R. 1067, Dr. Beaton's evaluation confirming that Ferguson does not have the capacity to perform basic work activity, R. 986, and assessments related to Ferguson's manic episodes. See e.g., R. 784, 1185; D. 17 at 9-11.

Medical opinions are statements made from acceptable medical sources that reflect judgments about the nature and severity of an impairment, including symptoms, diagnosis, prognosis and capabilities. See Deane v. Colvin, 247 F. Supp. 3d 152, 166 (D. Mass. 2017) (noting that Deane's own subjective statements about her condition did not raise those statements to level of medical opinion); 20 C.F.R. § 404.1527(a)(1).[4] The ALJ is not required to give any special

[4] These regulations continue to apply to claims filed before March 27, 2017. Ferguson filed her claims on March 18, 2014. R. 194, 413.

significance to opinions about whether a claimant is or is not disabled, able to perform regular or continuing work or has a severe impairment. 20 C.F.R. § 404.1527(d)(3). Such opinions are issues reserved to the Commissioner who is responsible for making the determination about whether the claimant is disabled. See Boardway v. Berryhill, No. 17-30069-KAR, 2018 WL 4323823, at *10 (D. Mass. Sept. 10, 2018) (explaining that the opinion that a claimant is unable to work is not entitled to any deference); 20 C.F.R. § 404.1527(d). If any of the evidence in the case record is inconsistent, the determination of whether a claimant is disabled will be based on the relevant evidence at hand. 20 C.F.R. § 404.1520(b)(b)(3).

Here, many of the notes referenced, such as Ferguson's overwhelmed state of mind, R. 799, her tendency to engage in negative self-messaging, R. 1067, and notes of mood swings and staying in bed, R. 1085, 1140, are Ferguson's own description of her own conditions, typically listed under headings such as "[p]atient's report of progress," and do not rise to the level of medical opinion. See Deane, 247 F. Supp. 3d at 166. As to Dr. Beaton, the determination in his vocational review that Ferguson does not have the capacity to perform basic work activity, R. 986, is one reserved for the Commissioner. Boardway, 2018 WL 4323823, at *10 (asserting that because the "ultimate decision of whether a claimant is disabled" is "administrative in nature," it is "reserved to the Commissioner") (quoting Cook v. Berryhill, No. 14-40112-DHH, 2017 WL 1135221, at *11 (D. Mass. Mar. 27, 2017). As such, the ALJ is not required to attach any type of special significance to this opinion which concerns the ultimate issue reserved to the ALJ.

### 3. The ALJ Properly Determined the Paragraph C Analysis

Ferguson argues that the ALJ conducted a Paragraph C analysis that was conclusory and rendered judicial review impossible. D. 17 at 11-12. The Paragraph C analysis considers whether a mental disorder is "serious and persistent." 20 C.F.R. Pt. 404, Subpt. P, App. 1; see also Couch

v. Berryhill, No. 18-11023-FDS, 2019 WL 2340956, at *4 (D. Mass. Jun. 3, 2019) (mentioning that claimant's mental impairments did not satisfy Paragraph C criteria because the record did not show that claimant had a limited capacity to adapt to environmental changes); 20 C.F.R. Pt. 404, Subpt. P, App. 1. It is the claimant's burden to show that her impairments satisfy a Listing. Torres v. Sec'y of Health & Human Servs., 870 F.2d 742, 745 (1st Cir. 1989).

The ALJ concluded that Ferguson's medical impairments, "considered singly and in combination," did not meet or equal the criteria of Listings 12.04 and 12.06. R. 169. Concerning the Paragraph B criteria for evaluating mental disorders, the ALJ found that Ferguson's mental impairments caused only "mild" limitations in three of the functional areas and "moderate" limitations in the remaining functional areas, R. 169-70, whereas Paragraph B criteria requires either an "extreme" limitation of one of the listed areas of mental functioning or a "marked" limitation of two of the listed areas to meet the level of an impairment. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ gave support for his decision that the Paragraph C criteria was not satisfied. R. 170. He reported that the record does not establish that Ferguson has minimal capacity to adapt to changes in her life. R. 170. The evidence cited by Ferguson refers to her own account of struggles of adjusting to a new diet, which does not rise to level of medical opinion. R. 1202. The ALJ further concluded that the Paragraph C criteria for evaluating Listings 12.04 and 12.06 mental disorders were not met. R. 170. The ALJ found that the record did not show that Ferguson had a minimal capacity to adapt to changes in her environment and therefore did not have an impairment or combination of impairments that met one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. These findings were not in error.

4. *ALJ's Evaluation of Ferguson's Credibility*

Ferguson argues that the ALJ made a credibility determination that was impermissibly conclusory. D. 17 at 12. She contends that the ALJ discredited her testimony by concluding that her descriptions resulted from self-limitation and that this determination should have been left to experts. D. 17 at 15. She further contends that the ALJ did not identify specific descriptions purported to be inconsistent with the record. D. 17 at 13.

The Court must consider a specific subset of factors when assessing a claimant's subjective complaints of symptoms: 1) the location, duration, frequency and intensity of pain or other symptoms; 2) precipitating and aggravating factors; 3) the type, dosage, effectiveness and side effects of medication; 4) treatment that the claimant has received for pain and symptom relief; 5) functional restrictions and 6) the claimant's daily activities. Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). These Avery factors are also enumerated in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Court must uphold the Secretary's findings if a reasonable mind could accept it as adequate to support his conclusion. Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938).

An ALJ must evaluate whether there are inconsistencies between the objective medical evidence and the claimant's own statements about his or her symptoms. See Ortiz v. Sec'y of Health & Human Servs., 995 F.2d 765, 769 (1st Cir. 1991) (explaining that determining the claimant's credibility and drawing inferences from record is ALJ's responsibility); 20 C.F.R. § 416.920(b). The resolution of conflicts in the evidence and the ultimate determination of disability is for the ALJ, not for doctors or for the Court. Butler v. Astrue, No. 08-11959-GAO, 2010 WL 1257981, at *5 (D. Mass. Mar. 29, 2010) (citing Rodriguez v. Perales, 402 U.S. 389, 399 (1971)); see Rodriguez, 647 F.2d at 222 (quoting Rodriguez v. Celebrezze, 349 F.2d 494, 496

(1st Cir. 1965)).  Substantial evidence is "more than a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971).

The ALJ considered the Avery factors in evaluating Ferguson's subjective complaints.  R. 171-76.  He considered her grievances by noting Ferguson's testimony of pain from carpal tunnel syndrome and impact of her mental health symptoms along with her functional limits.  R. 172, 176.  He considered that her recent family losses and other family stressors exacerbated Ferguson's depression and anxiety and may have served as precipitating and aggravating factors.  R. 173-74.  The ALJ considered Ferguson's improvement with medication and other mental health treatment and noted improvement in her physical symptoms with left carpal tunnel surgery following medication and other treatment in comporting her subjective complaints with the record.  R. 172-73.  The ALJ also supported his determination about the inconsistency of Ferguson's descriptions with substantial evidence from the record.

The ALJ found that many of Ferguson's "functional limitations are as a result of self-limiting behavior rather than true functional loss resulting from neurological or other physiological compromise."  R. 176.  Such conclusion conveys that Ferguson's subjective complaints were inconsistent with the medical record.  See Butler, 2010 WL 1257981, at *5 (stating that resolving inconsistencies in the record is a task for factfinder).  Ferguson's subjective complaints were inconsistent with evidence from the record, such as the various "normal" mental status findings, see, e.g., R. 1072, 1082, specific reports of improvement with treatment, R. 751, 1162, which satisfy the standard of "more than a mere scintilla" of evidence to support the ALJ's findings of inconsistency.  Richardson, 402 U.S. at 401.  Such evidence was sufficient to support a conclusion that Ferguson's statements regarding her limitations were inconsistent with the record.  Consolidated Edison Co., 305 U.S. at 229 (noting that substantial evidence calls for consideration

of whether record is "wholly barren of evidence" to support conclusions, rather than searching record to see if conclusion was actually sustained by substantial evidence).

### 5. Substantial Evidence Requirement

Ferguson contends that the ALJ failed to support his credibility determination and remaining factual determinations with substantial evidence, including the findings relating directly to her impairments and the decision of the weight afforded to treating source opinions. D. 17 at 18-20.

The ALJ found that given the claimant's age, education, work experience and residual functioning capacity, the claimant can make a successful adjustment to work at jobs that exist in significant numbers in the national economy, R. 178, a finding that was based on substantial evidence in the record. See Manso-Pizarro, 76 F.3d at 16 (noting that findings of the Commissioner of Social Security as to fact shall be conclusive if supported by substantial evidence). For example, Dr. Gagarin generally made note of "normal" mental status examinations and consistently stated that she was stable. See, e.g., R. 173, 1072, 1082, 1087, 1092, 1098-99, 1104, 1109, 1122, 1153, 1164.

The ALJ supported his credibility and weight determinations with reference to substantial evidence in the record. For example, he took into account medical notes that document Ferguson feeling better due to her medicine being managed, R. 765, treatment history, including Ferguson's carpal tunnel release surgery, R. 747-48, and medical opinions interpreting x-rays from various sources to show minimal arthritic change, R. 625, 629, 951.

### 6. Appeals Council

Ferguson submitted new records from NPS and an RFC assessment from Dr. Gagarin after the ALJ hearing. R. 15-162. She argues that the Appeals Council was "egregiously mistaken" in

choosing not to consider that evidence because it was new, material and contrary to the weight of the other evidence. D. 21 at 9.

An ALJ's decision "as to any fact," is conclusive if it is grounded in substantial evidence. 42 U.S.C. § 405(g). The Appeals Council generally will not consider evidence in addition to that introduced at the ALJ hearing unless the evidence offered is material to an issue it is considering. 20 C.F.R. § 416.1585. Their refusal to review the ALJ's decision, however, may be reviewable in court when there is an "egregiously mistaken ground" for that action. Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001); Anderson v. Colvin, No. 15-10480-IT, 2016 WL 2605093, at *5, *11 (D. Mass. Mar. 9, 2016). Further, the Appeals Council must offer something "more than a boilerplate justification" for its decision. Rosado v. Barnhart, 340 F. Supp. 2d 63, 67 (D. Mass. 2004).

The Appeals Council addressed the new evidence proffered by Ferguson that was not in front of the ALJ at the time of the hearing. R. 2. The letter mentioned records from NPS dated from August 12, 2015 to December 22, 2016 and noted that this material is not new, as it is a copy of an exhibit previously provided. R. 2, 185. It also mentioned additional treatment notes from NPS and an RFC from Dr. Gagarin and said that this material did not show a reasonable probability that it would change the outcome of the case. R. 2. Finally, the Appeals Council letter mentioned evidence from NPS dated from April 28, 2017 to June 22, 2017 and said that this material was irrelevant to the period at issue. R. 2. This explanation goes beyond boilerplate language, Cf. Barnhart, 340 F. Supp. 2d at 67 (noting merely that new evidence "did not provide a basis for changing" ALJ's decision is too broad and falls short of Mills standard), and gives reasons why each piece of proffered evidence was not considered. Accordingly, this Court does not conclude that the Appeals Council provided an egregiously mistaken ground for this action.

**VI.     Conclusion**

Based on the foregoing, the Commissioner's motion to affirm is ALLOWED, D. 18, and

Ferguson's motion to reverse, D. 16, is DENIED.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge